■ ELIZABETH LIGGIO, Individually, and as Parent and Natural Guardian of EVE LIGGIO, an Infant, et al., Appellants, v GAETANA LIGGIO et al., as Administratrix of the Estate of ANTHONY LIGGIO, Deceased, Respondents.— Judgment, Supreme Court, Bronx County, entered June 27, 1975, dismissing the complaint after a nonjury trial, reversed, on the law and the facts and in the exercise of discretion, and vacated and the matter remanded for a new trial, without costs or disbursements. The underlying facts are set forth in great detail by the dissent. We would merely note that we are remanding for a new trial so that the parties can fully present their positions in this family dispute. This course is preferable to acting in reliance on the sparse state of the present record. Concur—Birns, Capozzoli and Lane, JJ.; Lupiano, J. P., and Nunez, J., dissent in separate memoranda, as follows: Lupiano, J. P. (dissenting). The complaint herein contains three causes of action. The first cause of action is by plaintiff Elizabeth Liggio against the estate of Anthony Liggio, deceased, and seeks $23,700 for alimony, child support and additional moneys allegedly owed by virtue of the transfer of certain real property, to wit, premises known as No. 2123 Story Avenue, Bronx, New York. The second cause of action is by plaintiff Elizabeth Liggio against the afore-mentioned estate; Gaetana Liggio and Vito Liggio and seeks to set aside the conveyance of the premises to Gaetana Liggio as in fraud of the plaintiff. Counsel fees of $15,000 are also sought. In the third cause of action, plaintiff Elizabeth Liggio on behalf of her infant daughters, Eve, Susan and Elizabeth and Donna Liggio, her daughter who had reached the age of majority, seek to set aside the aforesaid conveyance as one made without consideration and in fraud whereby decedent was rendered insolvent. It was further alleged that this conveyance was made with knowledge of the plaintiffs' rights in an effort to conceal the decedent's assets at a time when he believed he would incur debts beyond his ability to pay. The defendants in their answer in effect generally deny the allegations of the complaint and assert as a sole affirmative defense the six-year Statute of Limitations bar regarding the first cause of action stated in the complaint. It is axiomatic that under denials, the defendants may offer any evidence tending to disprove anything the plaintiffs would have the burden of proving. CPLR 3018 (subd b) specifically notes "payment" as an affirmative defense. The caption of this lawsuit was subsequently changed to reflect the attaining of majority of Susan Liggio (now known as Susan Friess) and Elizabeth Liggio (now known as Elizabeth Padula), and the substitution of their mother, Elizabeth Liggio, for "John Doe" as the administratrix of Anthony Liggio, deceased, pursuant to letters of administration granted February 7, 1973. Scrutiny of the transcript of the brief nonjury trial and the miscellaneous documents and other papers admitted into evidence, discloses the following pertinent facts. Plaintiff Elizabeth Liggio and the decedent Anthony Liggio were married in 1947. The remaining plaintiffs, including the minor, Eve Liggio, are the children of Elizabeth and Anthony,

the grandchildren of defendant Gaetana Liggio (mother of Anthony) and the nieces of defendant Vito Liggio (brother of Anthony). The premises involved herein, to wit, 2123 Story Avenue, Bronx, New York, were owned by virtue of a deed dated January 25, 1955, by Anthony and Elizabeth, his wife, and by Vito Liggio and Lucy, his wife, now deceased. After Lucy Liggio died, Anthony and Elizabeth purchased Vito's interest in the real property which was conveyed to them by deed ·dated November 27, 1964. The premises consist of a two-family house, the ground floor having approximately six rooms, the upper floor having approximately seven rooms and a basement which has been converted into an apartment containing a bathroom, kitchenette and a living room. On or about April 19, 1965, Anthony Liggio and Elizabeth Liggio entered into a separation agreement which provided, *inter alia,* that "Whereas, in consequence of diverse disputes and unhappy conditions the parties hereto have separated and are now about to live separate and apart * * * and Whereas, the parties * * * have agreed on a settlement of all property rights * * * for the purpose of settling·all their differences and *for the welfare of their said children* * * * 3—The Wife shall have custody of all of the children * * * 4—The Husband agrees to pay the sum of $15.00 Fifteen dollars per week for each child to the said Wife for the support and maintenance of the issue of the marriage starting * * * April 19, 1965, until each child reaches the age of twenty one years or marries, whichever event is the earliest * * * 5—The Wife hereby waives any provision for her support * * * 10—The parties agree that in the event of a sale or conveyance of the two family house located at 2123 Story Avenue now owned by them the financial interest and distribution of the net proceeds of said sale shall be thirty five per cent (35%) to the Wife and sixty five per cent (65%) to the Husband. It is agreed that the Husband will manage and operate and have possession of this property from this date forward * * * 12—The Husband agrees to pay the Wife the sum of One thousand ($1,000) Dollars to the Wife one year from date of this Agreement provided she is still married to the Husband, Anthony Liggio" (emphasis supplied). In June, 1965, Elizabeth vacated 2123 Story Avenue with the children, but returned after two months. Subsequently, on September 10, 1965, Elizabeth conveyed her interest in said premises to her husband and concomitantly entered into a second separation agreement. All of the above-mentioned clauses of the first agreement were incorporated into the second agreement with the exception of the $1,000 payment to be made to the wife and with the following critical changes: In addition to the child support payments of $15 per week for each child commencing April 19, 1965, the husband now agreed "to pay the sum of $5.00 Five Dollars per week for the support of the Wife starting September 10, 1965" and "It [was] agreed, by and between Husband and Wife that in consideration of the deeding of the Wife's present title interest in premises 2123 Story Avenue * * * to the Husband that the Husband agrees to allow the Wife to occupy the first floor apartment in [said premises] for a period of five years from the signing of this Agreement at a rental of $50.00 per month * * * The Husband agrees to refrain from selling or disposing of premises 2123 Story Avenue for a period of one year from the signing of this agreement; and that in the event the Husband sells or disposes of the subject property prior to the expiration of the stated five year period he will pay to the Wife on transfer of title a sum equal to $100.00 per month in addition to all other payments agreed to in this separation agreement, until sixty months from the signing of this agreement in clarification of the above agreement, the Husband's payment of $100.00 per month and the Wife's tenancy at the rate of $50 per month

shall not total more than sixty months following the signing of this agreement". This agreement was witnessed by Patrick L. Wynne, who, according to Elizabeth's uncontradicted testimony, was the attorney for Anthony Liggio. Elizabeth, it appears, was not represented by an attorney in this matter. In April, 1966, Elizabeth moved out of the premises with her children and took up residence in an apartment in Queens, New York. Anthony Liggio then returned to the Bronx premises having theretofore for some period resided with his mother. There was unrebutted testimony that tenants occupied the upstairs apartment of the Bronx premises from 1965 to the present at a monthly rental of approximately $180. Further, Susan Friess, one of the daughters, testified that she usually visited her father once a month after the separation and observed tenants in the basement apartment. Elizabeth further testified that after the first separation agreement, she and Anthony lived together for a period in the house, but did not share the marital bed. Anthony Liggio died in November, 1971 of pneumonia in his forty-seventh year. His income other than that which might be generated from renting the Bronx apartments accrued from his engaging in a washing machine repair service. Prior to his death, by deed dated May 1, 1967—less than two years after entering into the second agreement—he deeded the Bronx premises to his mother. Plaintiff Elizabeth Liggio learned of this for the first time in January, 1972. She inquired of Vito Liggio, her brother-in-law, about the possibility of transferring the house back to her *or* the children. According to Elizabeth, Vito stated that he would check with the children's grandmother to see if she could give it to her grandchildren. Apparently, at this same time, the property was transferred without consideration by Gaetana Liggio to herself and Vito by deed dated January 8, 1972. Elizabeth further testified that she never attempted to enforce the provisions of the separation agreement while Anthony was alive because of his ill health and his own lack of money. In portions of his examination before trial, admitted into evidence on plaintiff's direct case, Vito Liggio admitted that many times Anthony was late in his alimony and support payments and he, Vito, would contribute on behalf of his brother to Elizabeth and her children. He also admitted that he received many complaints from Anthony's wife, the plaintiff, respecting the dereliction of her husband. Vito further asserted that he paid the monthly mortgage payments on the Bronx property and that at his brother's death, the equity in the house was $23,900. He acknowledged that Anthony Liggio collected the rents. At the nonjury trial, the plaintiffs' case consisted of testimony by Elizabeth Liggio, brief testimony by the daughter Susan Friess, the submission of portions of the examination before trial of Vito Liggio and the submission of certain documents, deeds and other papers in evidence. After the plaintiffs rested, the defendants without calling any witnesses or otherwise rebutting plaintiffs' case, also rested and moved to dismiss the complaint for failure to make out a prima facie case. The trial court determined to dismiss the complaint in a brief memorandum decision which in critical part declares: "There is *no evidence* of any claim against the decedent by any creditors or that the decedent was insolvent at the time of the transfer of the premises to his mother. As a matter of fact with respect to plaintiff's claim for non-support, pursuant to the separation agreement, no claim or legal proceedings to enforce any support payments was taken by plaintiff until this action was instituted after decedent's death. * * * Furthermore, we have *no satisfactory testimony* what, if anything, he owed in view of the fact that plaintiff admits to receiving a substantial sum from her husband * * * the court is of the opinion that plaintiffs have woefully failed to

establish that the decedent was insolvent at the time of the conveyance to his mother or that the conveyance was made to defraud creditors or to conceal his assets" (emphasis supplied). This result cannot be sustained on this record. Elizabeth Liggio at the inception of her testimony testified that from time to time she received payments from her husband under the separation agreement. Her testimony in this respect was further buttressed by admissions of the decedent's brother that Anthony, her husband, had difficulty in making payments, necessitating the intervention of Vito to assist his brother's wife and children. However, when Elizabeth attempted to testify and demonstrate the total amounts she had received for such support and alimony, defense counsel objected, citing the "Dead Man's" statute. Plaintiffs' counsel had endeavored to simplify Elizabeth's testimony by submitting a sheet containing a computation of the total moneys due from April 19, 1965 to November 26, 1971 (the date Anthony Liggio died) for child support and from September 10, 1965 to November 26, 1971 for alimony and showing additional moneys due on transfer of the premises of $100 per month from May 1, 1967 to April 1, 1971 (the approximate end of the 60-month period following the signing of the second separation agreement), less the moneys actually received, leaving a balance due of $22,400. He was frustrated by defense counsel's objection as aforesaid predicated on the "Dead Man's" statute (CPLR 4519). The court, apparently sustaining the objection solely on the "Dead Man's" statute, elicited an inquiry from plaintiffs' counsel as follows: "I haven't asked the question yet but let me see if I understand the ruling. I am asking her to testify to something that in no way would prejudice the decedent. She is going to testify to money received from him in payment of the amounts that were owed. It is my understanding that she *cannot* so testify" (emphasis supplied). The court clarified this issue with the response—"Objection sustained". This edict effectively precluded plaintiff Elizabeth Liggio from giving vital evidence and, indeed, viewed in conjunction with the total failure of defendants to give any evidence respecting payment, rendered this brief trial a mere exercise in semantics respecting the defendants' case. The illusory nature of the trial as one where a defendant *contests* a plaintiff's claim was effectively summed up by the trial court's statement at the conclusion: "It's a very simple case. The evidence didn't take very long." It is noted that the illusory nature of the trial was the product of defense counsel's trial tactics and a voluntary determination by defendants to rest their case without presenting any defense. Despite such tactics, plaintiffs patently succeeded in presenting a prima facie case as to the second and third causes of action and a prima facie case as to liability under the first cause of action. Clearly, under the Dead Man's statute, a party or interested person may testify against his or her own interest (see Richardson, Evidence [10th ed], § 400). The decedent's obligations were clearly delineated in the separation agreement and were, clearly, of a continuing nature. Arithmetical computation of those obligations for the period ending with Anthony's demise could thus be made. The issue, then, is whether such payments were made or excused. It is well to view the circumstances pragmatically. The dispute here is one involving relations and ultimately the interest of the issue of the marriage in what appears to have been the father's sole major asset. Parenthetically, there is an ironic note sounded by defense counsel's criticizing the plaintiffs' apparent failure of proof and the trial court utilizing this aspect as the crucial gravamen of its determination when such apparent failure was brought about by the trial tactics of the defense and the failure of the court to elucidate its cryptic remarks. Generally, payment is an affirmative defense

which must be pleaded. The burden of proving the defense of payment usually rests upon the defendant. Scrutiny of the record herein showed that payments had been received from time to time by Elizabeth Liggio on an informal basis. Apparently no receipts were given. Additionally, some payments were made by Vito on behalf of the decedent. As the defense was clearly from the inception of this lawsuit not prepared to carry its burden with respect to payment and even assuming the circumstances warranted placing such burden on plaintiff Elizabeth Liggio, then the frustration of said plaintiff's attempt to carry this burden obtains even greater import. A separation agreement is a contract between husband and wife made for the purpose of stabilizing the troublesome relationship and is subject to construction and interpretation the same as any other contract. It will be enforced like any other contract. "The mere fact that the husband has breached a separation agreement by defaulting in making the periodic support payments required thereby does not terminate the agreement. The wife may elect to affirm the agreement, relying on it for her support, and sue at law to recover the amount due thereunder" (16 NY Jur, Domestic Relations, § 686). In suing for the alimony and support arrears and the moneys owed by virtue of the transfer of the Bronx property, the action being one "on a contract for the payment of money, proof of the promise and that it has matured creates a presumption of nonpayment and throws the burden of proving payment upon the one who asserts it" (44 NY Jur, Payment, § 155). It thus appears that Elizabeth Liggio's attempt to testify as to the amount of payments made was not only against her interest, but would be of tangible aid in reducing the burden which the defense would otherwise carry. Defendants in resting without presenting any evidence or calling any witnesses, relied solely on the alleged failure of plaintiffs to make out a prima facie case. "Where a husband transfers his property to another without consideration and thereby renders himself unable to meet the claims of his wife under a separation agreement, the transfer may be set aside as fraudulent under the provisions of the Debtor and Creditor Law on fraudulent conveyances and transfers" (16 NY Jur, Domestic Relations, § 705). Under subdivision 1 of section 271 of the Debtor and Creditor Law, "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured". On his United States income tax returns for 1967 through 1970 inclusive, Anthony Liggio showed as his total income (generated by his washing machine repairs business) the following amounts respectively—$2,509, $2,793, $2,496 and $2,350. In deeding the Bronx property to his mother in 1967, Anthony, in view of his limited income, was divesting himself of a patently substantial asset and did so despite the obligations undertaken by him in the aforementioned second separation agreement.* There is no showing that this conveyance was for "Fair consideration" (Debtor and Creditor Law, § 272). Section 275 of the Debtor and Creditor Law provides that "Every conveyance made * * * without fair consideration when the person making the

---

* Child support both under the first as well as the second separation agreement totals $3,120 per year. In addition, under the first agreement as above noted, the wife was to receive a lump sum payment of $1,000 on or about April 19, 1966 and 35% of the proceeds in the event of a sale or conveyance of the real property. It was clearly contemplated therefore that the conveyance would be for consideration. Under the second and superseding agreement, in addition to child support in the amount already indicated, the husband undertook alimony payments totaling $260 yearly.

conveyance * * * intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors". It is also noted that despite the additional financial obligation envisioned by said separation agreement to be undertaken by the husband, Anthony, upon a transfer by him of the real property, the fact of this transfer was not communicated to plaintiff Elizabeth Liggio. It is well recognized that when a former husband has defaulted in payments due his former wife under a separation agreement, the said wife becomes a creditor under article 10 of the Debtor and Creditor Law entitled "Fraudulent Conveyances", whether her claim was *matured or unmatured,* and she could thereafter maintain an action to have the fraudulent conveyance set aside (see *Matthews v Schusheim,* 36 Misc 2d 918, revd on other grounds 18 AD2d 719, app dsmd 13 NY2d 756; Debtor and Creditor Law, §§ 275, 278, 279). Defendant Gaetana Liggio declares in answers to interrogatories in evidence at the trial that no sum of money was paid to Anthony Liggio for the conveyance of the premises to her. She avers that the consideration was an "implied promise" that she would help Anthony support his wife and children and that she did give moneys to Anthony for such support, to repair the house and to help with mortgage payments. Lack of memory as to specific dates and amounts is also asserted. The obligation to pay alimony and support was that of decedent. There is no writing by which defendants Gaetana Liggio or Vito Liggio agreed to answer to Elizabeth and her children for any default by Anthony in fulfilling that obligation. Obviously, once the property was transferred, it was in Gaetana's and Vito's own interest to make house repairs and mortgage payments. As to sums which they might have voluntarily advanced to Anthony prior to the conveyance to Gaetana in order to enable him to meet his obligations to his wife and children, such sums, even given the status of antecedent debts, do not comport with the requirement of *"fair* consideration" under the circumstances disclosed herein (see *Elmore Milling Co. v Carkees,* 255 App Div 410). The transfer by Anthony Liggio to his mother of the Bronx property under clearly adverse financial circumstances which served to frustrate or otherwise impede the rights of Elizabeth, his wife, and their children under the separation agreements cannot be justified by claimed consideration of the mother's oral promise to provide for the future support of the children of the marriage between Elizabeth and Anthony (see *Rush v Rush,* 19 AD2d 846). The conjectural promise of said future support is not fair consideration within the meaning of section 272 of the Debtor and Creditor Law (see *Matter of Oppenheim,* 269 App Div 1040; *Robinson v Stewart,* 10 NY 189, 195). Note is also taken of the implied covenant of good faith and fair-dealing that exists in every contract *(Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79, 87). Under the first separation agreement, the parties who held the real property as tenants by the entirety agreed that upon conveyance, the wife would receive 35% of the proceeds. The second agreement which we again note was entered into by the wife apparently without independent legal advice, contained changes clearly benefiting the husband. The second agreement, we again critically note, provided that "in consideration of the deeding of the Wife's *present* title interest in [the real property] to the Husband * * * The Husband agrees to refrain from selling or disposing of [the real property] for a period of one year from the signing of this agreement; and that in the event the Husband sells or disposes of the subject property prior to the expiration of the stated five year period he will pay to the Wife on transfer of title a sum equal to $100.00 per month in addition to all other payments * * * until sixty months from the signing of

this agreement" (emphasis supplied). That the transfer to the mother was clandestine is not disputed on this record. In an intrafamily transaction such as the conveyance herein, a heavier burden is placed upon the grantee to demonstrate fair consideration for the transfer (see *Sahley v Tipton Co.,* 264 F Supp 653, affd 386 F2d 450). Clearly, such burden has not been carried. Further, although the second agreement bears an acknowledgment of a notary public that it was signed on May 15, 1969, it is averred by Elizabeth Liggio that it was signed on September 10, 1965. This assertion harmonizes with the alimony provision in the agreement having its inception on said date and the deeding of the wife's *present* title interest in the premises (transferred by her by deed dated September 10, 1965, witnessed by the same individual who witnessed the second separation agreement and also notarized same, to wit, Patrick L. Wynne, purportedly Anthony Liggio's legal advisor). The arrears of alimony and child support accruing pursuant to a valid separation agreement and owing by decedent at his death at a time when the parties are not divorced or judicially separated, constitute a contractual debt, enforceable against the estate (see *Van Ness v Ransom,* 215 NY 557). As the agreement fixed the obligations of decedent to his wife and children, it imposed upon the estate the burden of pleading and proving payment (see *Matter of Bassford,* 91 NYS2d 105, affd 277 App Div 1128). This action was commenced on August 18, 1972 shortly after the death of Anthony Liggio on November 26, 1971. It is not disputed that as the first cause of action is based upon the separation agreement, the six-year Statute of Limitations applies (CPLR 213). "Where a contract provides for payment of a sum of money in specified installments, the Statute of Limitations runs against each installment as it becomes due and payable. (6 Williston, Contracts [Rev. ed.], pp. 5680-5681; *Haimes v. Schonwit,* 268 App. Div. 652, 655, affd. 295 N. Y. 577; *Sommer v. Sommer,* 94 N. Y. S. 2d 23, 25, affd. 277 App. Div. 998, *Matter of Sanchez,* 58 N. Y. S. 2d 230, 236; *True v Brainard,* 134 Misc. 70)" *(Matter of Philippe,* 31 Misc 2d 193, 197-198). We therefore hold that the plaintiff Elizabeth Liggio is barred from recovery of any installment that became due prior to August 18, 1966. With respect to the application of payments the "general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice" *(United States v Kirkpatrick,* 9 Wheat [22 US] 720, 737). "In the absence of any indication of an intention of either party to the contrary, payments should be applied to the extinguishment of those items or claims which are earliest in point of time, unless justice and equity demand a different appropriation" (43 NY Jur, Payment, § 67). Accordingly, with respect to plaintiff Elizabeth Liggio's first cause of action seeking child support and alimony arrears, liability for such arrears was established on the record herein. However, in view of plaintiff Elizabeth's good faith endeavor to demonstrate what payments had been made, acknowledging the bar of the Statute of Limitations, and under the unusual circumstances herein, an assessment is in order to determine the amount due subject to the six-year Statute of Limitations and subject to invocation that payments demonstrated to have been made shall be applied to the extinguishment of those claims for arrears which are earliest in point of time (see *Winer v Ginsburg,* 35 Misc 2d 1054). The court is not unmindful of the advanced years of the decedent's mother and of his natural inclination to afford her a residence, assuming she resides in the aforesaid Bronx premises, and this entered into his motivation in conveying the premises to her. There is similarly present the countervailing factor that despite the

estrangement between husband and wife, the issue of the marriage are natural subjects of decedent's inclination to do what is proper. Indeed, the human element which lies concealed behind the "cold" words of this record would, it is believed, have impelled the parties and their respective counsel to settle this matter without resort to litigation. Nevertheless, the matter has been litigated and this court is called upon to review the record and exercise its appellate function. Accordingly, it must be concluded that the conveyance by the decedent to his mother was without fair consideration and made under circumstances which mandate setting it aside as a fraudulent conveyance under article 10 of the Debtor and Creditor Law. It is beyond cavil that on this record plaintiffs made out a prima facie case for this relief and in view of defendants' decision to rest without advancing any contradicting evidence or testimony, relief to the plaintiffs under their remaining causes of action was warranted. In view of the setting aside of the conveyance of the Bronx premises, there is no basis for a claim by Elizabeth Liggio for the monthly payments of $100 delineated in the second separation agreement. With respect to plaintiff Elizabeth Liggio's claim for attorney's fees pursuant to section 276-a of the Debtor and Creditor Law set forth in the second cause of action, said statute permits same only where the "conveyance is found to have been made by the debtor and received by the transferee with *actual intent,* as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors" (emphasis supplied). This provision "is a modification of the law of costs and should be strictly construed" (24 NY Jur, Fraudulent Conveyances, § 147). Such intent was not sufficiently demonstrated to exist by plaintiff Elizabeth to warrant the imposition of attorney's fees under section 276-a. The relief afforded plaintiffs in setting aside the conveyance herein insofar as intent has been demonstrated is within the ambit of section 275 of the Debtor and Creditor Law which provides that "Every conveyance made * * * without fair consideration when the person making the conveyance * * * *intends or believes that he will incur debts beyond his ability to pay* as they mature, is fraudulent as to both present and future creditors" (emphasis supplied). The analysis presented above may be summed up as follows: "Certain circumstances have come to be recognized as indicia or 'badges' of fraud; and proof thereof has a more or less well-defined evidentiary force or effect. The evidentiary effect of circumstances of this character depends upon the showing as to whether a satisfactory explanation thereof has been presented" (24 NY Jur, Fraudulent Conveyances, § 15). Justice Nunez in his dissent declares in conclusory fashion: "The sparse record fully supports the Trial Court's findings that the plaintiff failed to establish decedent's insolvency at the time of the conveyance of the * * * property to his mother, or that the transfer was made to defraud creditors of the decedent or to conceal his assets. Nor is there *any* proof that *any* money was due and owing to plaintiff under the separation agreement * * * The plaintiff had apparently abandoned her rights against her deceased husband. Indeed, in September, 1965 she conveyed her interest in the subject premises to him. She took no steps to enforce the separation agreement until after his death" (emphasis supplied). Succinctly, there is no evidence in the record that substantiates such conclusions. Further, there is no suggestion that the detailed in depth analysis set forth above is in any manner in error on the law or on the facts as found in the record. To reiterate the pertinent facts are as follows: The conveyance by Elizabeth Liggio of her interest in the subject premises to Anthony, her husband, occurred *in conjunction with* and was *inextricably bound* to the entering into by the parties of a second

separation agreement. After plaintiffs rested, defendants moved to dismiss the complaint for failure to make out a prima facie case. The trial court reserved decision and inquired of defendants whether they now wished to rest or to proceed with their case. Defense counsel was afforded, at his request, an opportunity to consult with his clients. After a luncheon recess, he informed the court: "Your Honor, the defendants rest." Plaintiffs then moved for judgment and defendants declared that "At the conclusion of the entire case [we] move for judgment dismissing the complaint, based on the reasons * * * elicited to the Court prior to * * * adjournment on [our] motion to dismiss the plaintiffs' case for failure to make out a *prima facie* case." The trial court reserved decision on these motions. Thus, it is clear that defendants not only were *not* deprived of their day in court, but had their day in court. There was no error on the part of the trial court in its reserving decision on defendants' motion and affording defendants the opportunity to present a defense. This procedure cannot in any manner be characterized as frustrating the defendants in their endeavor to set forth a defense. On the contrary, defendants *determined* to rest and to rely on their motion, lest in proceeding they chance supplying proof supportive of plaintiffs' position. To view the accepted practice by the trial court in reserving decision on defendants' motion and that court's dismissal of the complaint *after* defendants rested, as the basis for concluding that defendants were deprived of their day in court and as justification for depriving plaintiffs of judgment under the second and third causes of action (to which they are clearly entitled on the record herein) is not in the interest of justice, would be grossly unfair and would, indeed, *on this record* constitute a miscarriage of justice. The fact that this is a family dispute involving defendant Anthony Liggio's mother and brother on one side and his wife and children on the other side, with the consequent emotional overtones such situation entails, mandates that these litigants be afforded justice, that is, a determination on the record, on the merits. Further, not only is there no basis on this record for concluding that Elizabeth Liggio has "apparently abandoned her rights against the decedent," but such conclusion would penalize her for, as has already been noted, not attempting to enforce the provisions of the separation agreement while Anthony was alive because of his ill health and his own lack of money. It is again noted, on this record, that the conveyance of the Bronx premises by deed dated May 1, 1967 from Anthony Liggio to his mother was clandestine and not revealed to Anthony's wife, Elizabeth, until January, 1972. Further, at about the time Elizabeth learned of this transfer, the property was transferred without consideration by the mother to herself and Anthony's brother Vito by deed dated January 8, 1972. Answering the dissent, there is a complete absence of any endeavor on defendants' part to preserve an interest in these premises for the grandchildren or for decedent's wife. Finally, study of the record, including the trial transcript and numerous exhibits containing, *inter alia,* certified copies of the deeds, Federal income tax returns and separation agreements, notice to admit and statements in reply, interrogatories and answers thereto, impels the conclusion that no basis or warrant exists, in law or equity, for remand of this entire matter for a new trial. It is again noted that it was defense counsel who objected and urged the "Dead Man's" statute when plaintiff Elizabeth Liggio attempted to testify on plaintiff's direct case as to *payments* received for child support and alimony. The error by the trial court in its ruling on this matter had its inception in the trial tactics of defense counsel. It is because of this error that the first cause of action for alimony and child support arrears should be remanded for an assessment. Even

assuming that this error undermined or frustrated in some manner the defendants in carrying their burden of showing payment, such error may not be characterized as frustrating the defendants with respect to their defense to the second and third causes of action which seek to set aside the conveyance of the premises to Gaetana Liggio as a fraudulent conveyance. Plaintiffs having demonstrated a prima facie case on the second and third causes of action, it was incumbent upon defendants to put in a defense demonstrating that the conveyance was not fraudulent. This, defendants totally failed to do. To reiterate, it is clear that decedent Anthony Liggio's obligations under the separation agreement were of a continuing nature, that he was unable to make payments of alimony and child support and that some payments were made sporadically on his behalf. Further, assuming defense counsel was correct and the trial court's ruling was proper to the effect that Elizabeth Liggio could not testify as to payments made, this ruling in no manner would prevent *defendants* from demonstrating that payment had been made in their defense to the second and third causes of action. The determination by defendants to rest without presenting any proof demonstrating that the conveyance was not fraudulent, relying solely on their contention that plaintiffs had failed to make out a prima facie case on these causes of action, was a calculated risk. This court *cannot* substitute its discretion for that of trial counsel in determining whether the taking of such risk was advisable. The judgment of the Supreme Court, Bronx County, entered June 24, 1975, dismissing the complaint after a nonjury trial, should be modified, on the law, to the extent of awarding the plaintiffs judgment under the second and third causes of action, setting aside the conveyance of the real property to Gaetana Liggio by decedent; further, plaintiff Elizabeth Liggio should have judgment on the first cause of action on the issue of liability only, and the matter should be remanded for an assessment, and as so modified, the judgment should be affirmed, with costs and disbursements. Nunez, J. (dissenting). I would affirm. The sparse record fully supports the trial court's findings that the plaintiff failed to establish decedent's insolvency at the time of the conveyance of the Story Avenue property to his mother, or that the transfer was made to defraud creditors of the decedent or to conceal his assets. Nor is there any proof that any money was due and owing to plaintiff under the separation agreement. I agree with the majority that we should "view the circumstances pragmatically." But in so doing, we should not remove this 82-year-old grandmother from the home provided for her by a dutiful son and compel her to go over the hill to await the final call in an institution, especially since the plaintiff has completely failed to clearly delineate her claim. The plaintiff had apparently abandoned her rights against her deceased husband. Indeed, in September, 1965 she conveyed her interest in the subject premises to him. She took no steps to enforce the separation agreement until after his death. Justice requires an affirmance of the dismissal of the complaint or, as a bare minimum, a remand for a new trial to give the plaintiff a second chance to prove her case, and the defendants to defend.