In the Matter of **DRIVE–IN DEVELOPMENT CORP., Debtor.**

**NATIONAL BOULEVARD BANK OF CHICAGO, Claimant-Appellant,**

v.

**DRIVE–IN DEVELOPMENT CORP., Debtor,**

**Park Livingston, Receiver, the Creditors' Committee of Drive-In Development Corp., City National Bank of Clearwater, Sarasota Bank & Trust Company, Ervite Corporation, Creditors-Objectors-Appellees.**

**No. 15779.**

United States Court of Appeals Seventh Circuit.

Dec. 19, 1966.

Rehearings Denied Jan. 18, 1967.

**216**

Justin A. Stanley, A. Daniel Feldman, Michael I. Miller, of Isham, Lincoln & Beale, Chicago, Ill., for appellant.

G. Kent Yowell, Charles Aaron, Michael Weissman, Chicago, Ill., Yowell & Cessna, Chicago, Ill., of counsel, for appellees.

Before KNOCH, KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

The principal question in this appeal relates to the circumstances which may bind a corporation to a guaranty of the obligations of a related corporation when it is contended that the corporate officer who executed the guaranty had no authority to do so. The facts giving rise to the question underlie a claim filed by the National Boulevard Bank of Chicago in an arrangement proceeding under chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799, in which the Drive In Development Corporation was the debtor. National Boulevard's claim was disallowed by the referee, whose decision was confirmed by the district court.

Drive In was one of four subsidiary companies controlled by Tastee Freez Industries, Inc., a holding company that conducted no business of its own. The other three subsidiaries were the Harlee Manufacturing Company, the Freez King Corporation, and the Allied Business Credit Corporation. Each of the subsidiaries performed one phase of the operation of an integrated business which franchised and supplied soft ice-cream stores and mobile units. Harlee franchised the "Tastee Freez" trademark to the operators of the stores and mobile units. Drive In leased or purchased sites for Tastee Freez and Carrols, Inc., an independent franchisee of the full line of Tastee Freez operations, and then subleased or sold the sites to the operators. Freez King manufactured and sold freezing equipment and mobile units to the operators, usually by a conditional sales contract. Allied Business financed these operations by purchasing the conditional sales contracts and discounting them to lending institutions. The proceeds of the loans were turned over to Freez King.

Tastee Freez, the parent, was incorporated in 1960. Prior to that time Leo S. Maranz owned or controlled a majority of the stock of Harlee, Freez King, Allied Business, and Drive In. When Tastee Freez was created, Maranz became its president; he was also an officer or di-

rector of each subsidiary.[1] The other officers and directors of this group of corporations were close business associates and members of his family. In 1962 the officers of Drive In were: Sylvan Spira, president; Leo S. Maranz, vice president; George M. Dick, secretary; and Bernard Spira, treasurer. The directors were Maranz, Sylvan Spira, and Dick.[2]

The guaranty by Drive In which forms the basis of the claim in this proceeding was given National Boulevard in connection with an April 1962 undertaking by which Allied Business agreed to sell and assign to the bank conditional sales contracts generated by Freez King. Allied Business had entered similar financing arrangements in lesser amounts with National Boulevard since 1960 which had included guaranties by the various Tastee Freez subsidiaries, but Drive In had not been a guarantor in any of them.[3]

Early in 1962 Tastee Freez estimated that it would need in excess of seven million dollars to meet its financial requirements for the calendar year. Tastee Freez turned to National Boulevard for assistance in the expanded program. On April 9, 1962, Allied Business entered into a contract with the bank that set forth the terms by which conditional sales contracts would be assigned to National Boulevard. One of the terms of the contract read:

> In the event the whole or any part of any installment payment due under the terms of Chattel Paper assigned to the Bank becomes and remains in default for a period of ninety (90) days, then and in that event [Allied Business] agrees * * * to purchase such Chattel Paper for a price equal to the unpaid balance due under the terms of such Chattel Paper in default.

Two days later, on April 11, 1962, Tastee Freez, Harlee, Freez King, Carrols, and Drive In executed an instrument whereby they jointly and severally guaranteed Allied Business' obligations under its contract with National Boulevard.[4] Maranz signed the guaranty on behalf of Drive In as "Chairman" and Dick attested to its execution as secretary.

National Boulevard requested a copy of the resolution by the board of directors of each of the guarantors authorizing the execution of the guaranty. Copies of these resolutions were furnished by all guarantors except Tastee Freez. Drive In's copy was certified, with the corporate seal affixed, by Dick, the corporation's secretary. No such resolution, however, was contained in Drive In's corporate minute book.[5]

---

1. Maranz also held a five-year proxy which authorized him to act as the sole shareholder of each subsidiary.

2. Dick was also an officer and a director of the three other subsidiaries and Sylvan Spira was an officer of Tastee Freez.

3. Tastee Freez and its subsidiaries banked at National Boulevard and each of these companies adopted corporate resolutions authorizing its officers to engage in a variety of transactions with the bank.

4. The pertinent part of the guaranty reads: FOR VALUE RECEIVED, and to induce National Boulevard Bank of Chicago (Bank) to purchase, with recourse, certain Chattel Paper from Allied Business Credit Corporation, an Illinois corporation (A.B.C.), we jointly and severally guarantee full and prompt payment by A.B.C. of its obligation to repurchase any of such Chattel Paper which becomes and remains in default for ninety (90) days, to the extent of Five Million Five Hundred Thousand Dollars ($5,500,000); and we jointly and severally agree to pay, in addition thereto, all costs, expenses and reasonable attorney's fees paid or incurred in endeavoring to collect such obligation, or any part thereof, and in enforcing this instrument.

5. At the hearing before the referee, Dick testified that he did not remember a board of directors' meeting at which a resolution authorizing the execution of the guaranty was presented, although he stated that a number of informal meetings of the directors were held and that such a resolution was discussed at one of the meetings. Dick also testified that Leo Maranz and Bernard Spira and Sylvan Spira were aware of the fact that between 1960 and 1963 National Boulevard on several occasions asked for guaranties from several of the companies; further, he testified that he didn't recall any of them objecting to the fact that he had given a guaranty.

National Boulevard advanced substantial sums of money to Allied Business during 1962 pursuant to the agreement of April 9, 1962. On February 26, 1963, National Boulevard also approved the purchase of conditional sales contracts generated by Carrols and assigned to Allied Business, and additional amounts were advanced.[6]

On September 4, 1963, Tastee Freez and each of its subsidiaries, including Drive In, filed voluntary petitions under chapter XI of the Bankruptcy Act. National Boulevard filed a claim against Drive In before the referee, asserting the guaranty executed on April 11, 1962 as the basis for it. In its claim, National Boulevard included (a) amounts advanced to Allied Business prior to the execution of the guaranty, (b) amounts advanced to Allied Business subsequent to the execution of the guaranty under the contract of April 9, 1962, and (c) amounts advanced to Allied Business in 1963 attributable to the purchase of paper generated by Carrols. The referee disallowed National Boulevard's claim in its entirety.

■ We must resolve a preliminary question concerning the objectors' standing to challenge National Boulevard's claim. The referee entered an order that all creditors and any others having an interest in the estate should file their objections to the bank's claim by a certain date. A creditors' committee and several individual creditors filed timely objections. The debtor and the receiver filed separate objections. All except the debtor questioned Maranz' authority to execute the guaranty. National Boulevard contended that neither the receiver nor the creditors had standing to object to the claim. The referee held that both had the right to object. Even though it may be questionable whether a receiver in an arrangement proceeding under

chapter XI has the right to object to a creditor's claim since his powers are limited by the act, we think that the creditors have a right to raise such objections.

Section 302 of the Bankruptcy Act, 11 U.S.C. § 702, provides that chapters I to VII of the act "shall, insofar as they are not inconsistent with or in conflict with the provisions of this chapter [XI], apply in proceedings under this chapter." Section 57d of chapter VI of the act, 11 U.S.C. § 93d, provides that claims which have been duly approved shall be allowed "unless objection to their allowance shall be made by parties in interest. * * *" A creditor is a "party in interest" with respect to another creditor's claim. The courts, however, have given a gloss to this provision that has well-nigh uniform application in ordinary bankruptcy proceedings. Collier states:

> [T]he needs of orderly and expeditious administration do not permit a full and unlimited exercise of this "natural" right [the right of a creditor to object to the allowance of another creditor's claim]. The most important qualification attached to the creditor's right to object is a kind of monopoly in the trustee to act as the mouthpiece of all creditors. Once a trustee is elected and has qualified no general creditor may contest another general creditor's claim, unless the trustee upon application refuses to object * * * in which case the creditor may petition the court either to compel the trustee to object or to be allowed to object in the trustee's name. 3 Collier, Bankruptcy 255–57 (14th ed. 1966).

Since ordinarily there is no trustee in a chapter XI proceeding, no demand can be made by the creditors on a trustee to object to a claim in their behalf; therefore the rule stated by Collier cannot apply. The bank argues, however, that in

---

6. In conveying its approval to Allied Business of the purchase of paper generated by Carrols, the bank stated:

> These Carrol's, Inc. contracts will carry guarantees of Allied Business Credit Corp. and Tastee Freez Industries, Inc.

but not personal guarantees of Leo S. and Esther S. Maranz.
This agreement will in no way, change or effect [sic] any of the guarantees we now hold on contracts previously purchased from Allied Business Credit Corp.

the absence of a trustee, it is incumbent upon a creditor in an arrangement proceeding to make demand on the debtor, and if the debtor refuses, to request leave to file an objection.

■ The rule requiring that the trustee initially object to the allowance of a claim in ordinary bankruptcies is a procedural rule evolved by the courts. Since the trustee is the representative of the creditors, it is a rule developed for the orderly administration of estates. But this rule ought to have no application in a chapter XI proceeding when there is no trustee representing the creditors. To require a demand to be made on the debtor, who is not the creditor's representative, would not foster the orderly administration of the estate; such a requirement is therefore not warranted. We hold that a creditor in a chapter XI proceeding has the right to object to the allowance of another creditor's claim.

■■ Turning to the merits of the objections to National Boulevard's claim, the referee found that Drive In's minute book did not show that a resolution authorizing Maranz to sign the guaranty was adopted by the directors and that Dick could not recall a specific directors' meeting at which such a resolution was approved. From these findings, the referee concluded that Maranz, who signed the guaranty on behalf of Drive In, had no authority, "either actual or implied or apparent," to bind Drive In. This conclusion was erroneous. Drive In was estopped to deny Maranz' express authority to sign the guaranty because of the certified copy of a resolution of Drive In's board of directors purporting to grant such authority furnished to the bank by Dick, whether or not such a resolution was in fact formally adopted.[7] Dick was the secretary of the corporation. Generally, it is the duty of the

secretary to keep the corporate records and to make proper entries of the actions and resolutions of the directors. Therefore it was within the authority of Dick to certify that a resolution such as challenged here was adopted. Statements made by an officer or agent in the course of a transaction in which the corporation is engaged and which are within the scope of his authority are binding upon the corporation. Consequently Drive In was estopped to deny the representation made by Dick in the certificate forwarded to National Boulevard, in the absence of actual or constructive knowledge on the part of the bank that the representation was untrue.

In McMan Oil & Gas Co. v. Hurley, 24 F.2d 776 (5th Cir. 1928), resolutions of an executive committee and a board of directors authorizing the conveyance of an interest in oil lands were challenged as not having been adopted by majority vote. The court, however, found sufficient authority for the execution of the conveyance, stating:

> The resolutions, both of the executive committee and of the board of directors, purport to have been adopted by majority votes. It is conclusively presumed that they were so adopted by reason of the certificates to that effect issued by the secretary and delivered to appellant by the general attorney of the [corporation]. A corporation is estopped to deny the representations of its officers and agents made within the scope of their authority. Id. at 778.

A similar conclusion was reached in C.L. McClain Fuel Corp. et al. v. Lineinger, 341 Pa. 364, 19 A.2d 478 (1941), where certain assignments of accounts receivable to a trust company by the president of a corporation were questioned as having been made without authority from

---

7. The certified copy of the resolution provided in pertinent part:

[T]he officers of this corporation are authorized to execute on behalf of the corporation, a guarantee to National Boulevard Bank of Chicago under which this corporation agrees to guarantee full and prompt payment of the obliga-

tion of Allied Business Credit Corporation to National Boulevard Bank of Chicago to repurchase chattel paper which remains in default for ninety (90) days, to the extent of five million five hundred thousand dollars ($5,500,-000.00). * * *

the board of directors. There the secretary of the corporation had given the trust company a certified copy of a resolution purporting to grant such authority. The court stated that "since the furnishing of such a certificate was within the authority of the secretary, the trust company was justified in relying upon it, and the corporation is estopped to assert that such resolution was not in fact passed by the board of directors." Id. 19 A.2d at 480. Accord, In re New York Car Wheel Works, 141 F. 430 (W.D. N.Y.1905); Hutchison v. Rock Hill Real Estate & Loan Co., 65 S.C. 45, 43 S.E. 295 (1902).

The objectors argue that since William Schneider, a vice president of National Boulevard, requested Dick to furnish the certified copy of a resolution granting authority to execute the guaranty, and since Hugh Driscoll, another vice president of National Boulevard, was also a director of Tastee Freez and was familiar with the organization of the subsidiaries, the bank was somehow in a position to know that no resolution had in fact been adopted by Drive In's board of directors. These facts, however, fall far short of proving such knowledge on the part of National Boulevard.

Looking at this case realistically, it is apparent that Drive In was one of a number of subsidiary corporations in a complex dominated by Maranz. Drive In was part of an integrated business enterprise, and whatever benefited one part of the enterprise benefited all.[8] Although the objectors do not contend that Drive In's guaranty was ultra vires,[9] they argue that a guaranty by one corporation of the obligation of another not shown to be in furtherance of the first corporation's business is an extraordinary and unusual contract, and that in such a situation unusual powers of corporate officers are not to be lightly inferred. Although intercorporate contracts of guaranty do not usually occur in the regular course of commercial business, here the interrelationship of Tastee Freez and its subsidiaries presented a situation in which the guaranty was not so unusual as would ordinarily obtain. Furthermore, the realities of modern corporate business practices do not contemplate that those who deal with officers or agents acting for a corporation should be required to go behind the representations of those who have authority to speak for the corporation and who verify the authority of those who presume to act for the corporation.

National Boulevard concedes that the guaranty in question does not include the conditional sales contracts assigned to it by Allied Business before the effective date of the guaranty, April 11, 1962. We are in agreement with the referee that the guaranty did not include the conditional sales contracts generated by Carrols in 1963. Moreover, we agree with the referee that reserves held by the bank and unearned discount attributable to the contracts purchased during the remaining period should be deducted from the bank's claim. But as so limited to $436,-965.03, National Boulevard's claim should be allowed.

The order of the district court confirming the referee's order is reversed in part and affirmed in part.

---

8. During the same period in which National Boulevard advanced over one million dollars to Allied Business which was immediately turned over to Freez King, Freez King advanced $484,000 to Drive In.

9. The objectors concede that the only question here is an agency question, that if Maranz had authority to act for Drive In in executing the guaranty, Drive In could not assert lack of power as a defense in light of Ill.Rev.Stat. ch. 32, § 157.8 (1965), which reads in part:
No act of a corporation * * * shall be invalid by reason of the fact that the corporation was without capacity or power to do such act * * *.