**In re LUIS ELECTRICAL CONTRACTING CORP., Debtor.**

C. Steven HACKELING, Trustee of the Estate of Luis Electrical Contracting Corp., Plaintiff,

v.

CHARTER FINANCIAL, INC. and Chrysler Capital Corporation, Defendants.

C. Steven HACKELING, Trustee of the Estate of Luis Electrical Contracting Corp., Plaintiff,

v.

CHARTER FINANCIAL, INC. and Sogelease Corporation, Defendants.

C. Steven HACKELING, Trustee of the Estate of Luis Electrical Contracting Corp., Plaintiff,

v.

CHARTER FINANCIAL, INC. and John Hancock Leasing Corp., Defendants.

C. Steven HACKELING, Trustee of the Estate of Luis Electrical Contracting Corp., Plaintiff,

v.

CHARTER FINANCIAL, INC. and Amsave Credit Corporation, Defendants.

C. Steven HACKELING, Trustee of the Estate of Luis Electrical Contracting Corp., Plaintiff,

v.

CHARTER FINANCIAL, INC. and Bank of New England, N.A., Defendants.

C. Steven HACKELING, Trustee of the Estate of Luis Electrical Contracting Corp., Plaintiff,

v.

CHARTER FINANCIAL, INC. and Heller Financial Inc., Defendants.

**C. Steven HACKELING, Trustee of the Estate of Luis Electrical Contracting Corp., Plaintiff,**

**v.**

**MONY CREDIT CORPORATION, Defendant.**

Bankruptcy No. 888–80242–20.
Adv. Nos. 890–8074–20, 890–8077–20, 890–8078–20, 890–8080–20, 890–8081–20, 890–8092–20 and 890–8099–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Oct. 20, 1992.

Levine, Weinberg, Kaley & Pergament, P.C., Special Counsel to C. Steven Hackeling, Trustee, Garden City, NY.

Stroock & Stroock & Lavan, New York, NY, for defendants MONY Credit Corp. and Sogelease Corp.

Wachtell, Lipton, Rosen & Katz, New York, NY, for defendant Charter Financial, Inc.

Sydney Hyman and Associates, P.C., New York, NY, for defendant Amsave Credit Corp.

Moritt, Hock & Hamroff, Hempstead, NY, for defendant John Hancock Leasing Corp.

DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

PRELIMINARY STATEMENT

This matter comes before the Court upon motions for summary judgment ("Sum-

mary Judgment Motions") made by four (4) of the eight (8) defendants (collectively, the "Defendants") in the above-captioned adversary proceedings (the "Adversary Proceedings"). The moving Defendants are Charter Financial, Inc., Sogelease Corporation, Amsave Credit Corporation, and MONY Credit Corporation. John Hancock Leasing Corp. submitted a statement in support of Charter Financial, Inc.'s summary judgment motion.

The Adversary Proceedings were commenced in or about March 1990 by C. Steven Hackeling, chapter 7 trustee (the "Trustee") of the above-referenced estate of Luis Electrical Contracting Corp. (the "Debtor"). Pursuant to the Adversary Proceedings, the Trustee seeks to avoid and set aside certain allegedly fraudulent transfers made by the Debtor to the Defendants.

For the reasons set forth below, the Summary Judgment Motions are GRANTED. Because the non-moving Defendants are merely assignees of the moving Defendants (as discussed below), and for purposes of these Adversary Proceedings hold the same rights, this decision and order grants summary judgment in favor of both the moving and the non-moving Defendants.

The Court has jurisdiction over these Adversary Proceedings pursuant to sections 157(b)(2)(H) and 1334 of title 28, United States Code. The Summary Judgment Motions are made pursuant to Federal Rule of Civil Procedure 56, made applicable to this matter by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### FACTUAL HISTORY

The Court finds, from the documentary evidence submitted by both the Trustee and the moving Defendants, and from the hearing held before the Court on the Summary Judgment Motions on October 11, 1990, that the undisputed facts are as follows.

On or about March 10, 1988, the Debtor filed a bankruptcy petition for relief under chapter 7 of title 11, United States Code (the "Bankruptcy Code"). The Debtor was in the business of electrical contracting. Between 1986 and 1989, the Debtor engaged in certain financial transactions with the Defendants. It is with these transactions that the Trustee's causes of action are concerned.

For convenience, the relevant transactions between the Debtor and each of the Defendants will be set forth in separate portions of the Court's opinion preceded by the name of the respective Defendant.

### CHARTER FINANCIAL, INC.

Between April 18, 1986 and August 14, 1986, the Debtor and Charter Financial, Inc. ("Charter") entered into eleven (11) lease agreements (the "Lease Agreements"). Pursuant to the terms of the Lease Agreements, Charter agreed to lease items of personal property to the Debtor. The items consisted of equipment, such as diesel fuel electrical generators, including all associated hardware. Each of the Lease Agreements referred to a different piece and amount of the equipment. The Debtor agreed to tender sixty (60) monthly payments under each Lease Agreement to Charter. Depending upon the amount of equipment to be leased under each individual Lease Agreement, the Debtor's required monthly payments to Charter varied from $6,515.29 to $18,669.06.

For each of the Lease Agreements, Charter obtained certified copies of resolutions of the board of directors of the Debtor ("Corporate Resolutions"). Each Corporate Resolution acknowledged that the Lease Agreements were in conformity with the Debtor's corporate charter and by-laws, and that any one of the Debtor's officers would be authorized to enter into the Lease Agreements in the name and on behalf of the Debtor. Each of the Corporate Resolutions contained the signature of either Louis Rosally, president of the Debtor, Domenico Rabuffo, secretary of the Debtor, or both.

The Lease Agreements also specified that: (i) the Debtor had selected the equipment prior to Charter's having purchased it; (ii) the Debtor, not Charter, had selected

the vendor of the equipment; and (iii) the Debtor was obligated to tender the monthly payments under each Lease Agreement whether or not the Debtor actually received the equipment and whether or not it was in working order.

In each of the Lease Agreements, the Debtor selected Steinway Electrical Corporation ("Steinway") as vendor of the equipment. Charter then received Steinway's invoices for the equipment from the Debtor. Steinway's invoices reflected orders for the equipment which were placed between approximately February 17, 1986 and August 6, 1986. The Steinway invoices also included a description of the equipment, its price, and the order date. Charter was listed as the purchaser of the equipment while the Debtor was listed as the recipient of the shipments.

The Debtor furnished Charter with eleven (11) documents, all signed by either Louis Rosally or Domenico Rabuffo (except for one unsigned document), which contained language to the effect that the equipment was actually received by the Debtor in good working condition.

Finally, the Debtor furnished Charter with signed U.C.C.—1 financing statements, purporting to grant Charter a security interest in the equipment.

Pursuant to each of the Lease Agreements, Charter delivered eleven (11) checks of varying amounts to the Debtor, each made payable to and deposited by Steinway. The sum received by Steinway through the eleven (11) checks was $4,540,972.53.

The Lease Agreements were all subsequently assigned by Charter to six (6) other financial institutions (collectively, "Charter's Assignees"). In each of the Trustee's Adversary Proceedings commenced against Charter, one of Charter's Assignees has been named as a joint defendant. Following is a discussion of the relevant facts surrounding those of Charter's Assignees that have moved for summary judgment, and of John Hancock Leasing Corp. which filed a statement in support of Charter's motion.

## SOGELEASE CORPORATION

At or about the time of execution of Lease Agreement numbered 1068 and dated May 5, 1986, Sogelease Corporation ("Sogelease") became one of Charter's Assignees. In consideration for this assignment, Sogelease paid Charter $848,625.77, by wire transfer.

The Debtor's sixty (60) monthly payments of $18,669.06 to Sogelease (as assignee) under this Lease Agreement were to commence on June 6, 1986. Between June 1986 and September 1987, Sogelease received 15 (fifteen) monthly payments from the Debtor. Thereafter, Sogelease received no further payments from the Debtor.

## JOHN HANCOCK LEASING CORP.

John Hancock Leasing Corp. ("Hancock Leasing") became one of Charter's Assignees by virtue of a lease assignment executed on May 27, 1986. Hancock Leasing was assigned Lease Agreement numbered 1081, also dated May 27, 1986. The Debtor's payments pursuant to this Lease Agreement continued to be remitted to Charter who, subsequent to this assignment, in turn remitted them to Hancock Leasing.

## AMSAVE CREDIT CORPORATION

In 1986, Amsave Credit Corporation ("Amsave Credit") engaged in two (2) financial transactions with or related to the Debtor. The two (2) transactions, an assignment from Charter of one of the Lease Agreements, and a loan transaction with the Debtor, are discussed individually in parts A and B below.

A. Charter's Assignment to Amsave Credit

By agreement dated July 18, 1986, Charter assigned Lease Agreement numbered 1109, dated July 17, 1986, to Amsave Credit. In consideration for this assignment, Amsave Credit paid Charter $545,566.65 by wire transfer.

The Debtor's sixty (60) monthly payments of $12,145.65 to Amsave Credit (as assignee) were to commence on July 21, 1986. Between July 1986 and August 1987, Amsave Credit received fourteen (14)

monthly payments from the Debtor. Thereafter, Amsave Credit received no further payments from the Debtor.

### B. Amsave Credit's Loan to the Debtor

The Debtor and Amsave Credit also entered into a loan transaction pursuant to which Amsave Credit loaned the sum of $1,177,980.44 (the "Amsave Loan") to the Debtor for the purchase of equipment. The Amsave Loan was accomplished by the following.

On August 13, 1986, the Debtor executed a promissory note pursuant to which the Debtor undertook the obligation of paying Amsave Credit $1,555,702.20. This sum was to be paid in sixty (60) equal monthly installments of $25,928.37, commencing in September 1986. The Debtor also executed and delivered to Amsave Credit the following documents: (i) a chattel mortgage agreement in which the Debtor granted to Amsave Credit a first purchase money security interest in the equipment purchased with the Amsave Loan proceeds; (ii) two Steinway invoices setting forth a description of the equipment/collateral, its price and specifying Amsave Credit as the purchaser and the Debtor as the recipient of the shipped equipment; (iii) an "Acceptance To Equipment and Authority To Pay Vendor" document, in which the Debtor set forth that the Equipment had been satisfactorily delivered, inspected and received by the Debtor and which "irrevocably" authorized Amsave Credit to distribute the proceeds of the Amsave Loan directly to Steinway, the vendor; and (iv) two U.C.C.—1 financing statements which (if properly filed) would grant to Amsave Credit a perfected security interest in the equipment. Additionally, both Louis Rosally and Domenico Rabuffo executed personal guaranties of the obligations of the Debtor to Amsave Credit.

Following execution and delivery of these documents, Amsave Credit tendered to Steinway a check made payable to it in the amount of $1,158,017.50, and to First Intercounty Bank of New York a check made payable to it in the amount of $19,-940.94 (which two checks' sum is equal to the amount of the Amsave Loan).

Amsave Credit received twelve (12) monthly payments from the Debtor through September 1987, but did not receive any payments thereafter.

### MONY CREDIT CORPORATION

On December 16, 1986, the Debtor and MONY Credit Corporation ("MONY") entered into a loan agreement pursuant to which MONY lent to the Debtor $2,400,000 for the purchase of equipment. In connection with this loan, the Debtor also executed and/or delivered to MONY the following: (i) a security agreement, also dated December 16, 1986, wherein the Debtor granted to MONY a security interest in the equipment purchased with the loan proceeds; (ii) five (5) purchase orders and five (5) invoices for equipment on Steinway stationary as evidence of the Debtor's purchase of the equipment from Steinway; (iii) a "Delivery and Acceptance Certificate", signed by Domenico Rabuffo as secretary-treasurer, wherein the Debtor represented that the equipment was delivered new by the manufacturer, inspected and "irrevocably" received by the Debtor; (iv) a promissory note pursuant to which the Debtor promised to repay the loan to MONY in sixty (60) equal monthly installments of $50,992.82 plus interest calculated each month with a certain specified formula; (iv) an "Opinion of Counsel" letter executed by the Debtor's counsel stating that the loan from MONY did not conflict with the Debtor's corporate charter or its by-laws, that the documents executed in accordance therewith would not violate any laws, and that the loan agreement and the accompanying documents created a valid and binding obligation of the Debtor.

Following execution and delivery of these documents, MONY delivered a check to the Debtor, made payable, at the Debtor's request and pursuant to the loan documents, to Steinway, vendor of the Equipment.

MONY received payments from the Debtor pursuant to its loan between January 16, 1987 and October 12, 1987 amount-

ing to $413,367.25, but did not receive any payments thereafter.

## THE TRUSTEE'S CAUSES OF ACTION

The Trustee alleges that all payments transferred by the Debtor to the Defendants pursuant to the financial transactions described above (the "Transfers"), constituted fraudulent transfers which may be recovered from the Defendants.

The Trustee alleges that the officers of the Debtor, Luis Rosally and Domenico Rabuffo (the "Officers"), and one Irwin Schiff, completely defrauded the Defendants. By executing purportedly valid and binding documents including lease agreements, promissory notes, U.C.C. financing statements and security agreements, attorney opinion letters, and personal guarantees, the Officers were able to deceive the Defendants into giving large sums of money to Steinway. Unbeknownst to the Defendants, the Officers were also principals of Steinway.

The Trustee contends that because of the fraud by the Officers, no debt was created by the execution of the above documents, the Debtor incurred no legal obligations to the Defendants, and owed the Defendants nothing. Thus, although both the Officers and Steinway are liable to the Defendants, the Debtor is not. Since no valid legal obligation required the Debtor to make the Transfers to the Defendants, they were purely gratuitous and the Debtor received nothing in return. The Transfers, therefore, were not transfers in satisfaction of antecedent debts of the Debtor (which, as discussed below, are not avoidable by the Trustee). The Trustee states that the Transfers may have resulted in a satisfaction of the Officers' and Steinway's antecedent debt owed to the Defendants. But as to the Debtor, the Transfers were avoidable fraudulent transfers.

The Trustee further alleges that the Debtor received no benefit from any of the financial transactions entered into with the Defendants. The Trustee makes this allegation because the Debtor did not directly receive any of the loan proceeds (all loan proceeds collectively referred to hereinafter as, the "Loan Proceeds") since all of the Loan Proceeds were in the form of checks made payable to Steinway. The Debtor did not even receive the use and benefit of any of the equipment (hereinafter collectively referred to as the "Equipment") which the Officers purported to lease and purchase because, the Trustee alleges, the Equipment may have never existed. Since the Debtor never received the Loan Proceeds, nor the use and benefit of any Equipment, the Debtor did not incur any debt. Thus, the Transfers were not made in satisfaction of any antecedent debt and therefore, the Trustee argues, constituted avoidable fraudulent transfers.

## THE DEFENDANTS' RESPONSE

The Defendants' responsive argument is that each Transfer was made in satisfaction of valid antecedent debt and therefore, by definition, such transfers do not constitute avoidable fraudulent transfers.

The Defendants argue as follows. The Defendants agree that they were defrauded by the Officers and Steinway and that the Debtor never actually received any of the Loan Proceeds. There is some question and conflict among the Defendants as to whether the Equipment actually existed.

The Defendants contend, however, that the documents executed and delivered by the Officers in connection with the loans (the "Loans") and Lease Agreements created valid debts, owed by the Debtor to the Defendants. These transactions created the Debtor's antecedent debt. Thus, as the Defendants received each of the Transfers, the Debtor received a proportionate satisfaction of its antecedent debt. Since the Transfers were exchanged in satisfaction of antecedent debt, and since such satisfaction was the fair equivalent of the Transfers, then fair consideration as well as value was given for all Transfers. Accordingly, under the fraudulent transfer definitions contained in both the Bankruptcy Code and the New York Debtor and Creditor Law, the Transfers were not fraudulent or avoidable.

## DISCUSSION

For the Defendants' argument to succeed, the Officers' acts, whether fraudulent or not, had to create valid antecedent debt, owed by the Debtor to the Defendants, which antecedent debt existed at the time of each of the Transfers.

We first address the antecedent debt exception to the definition of avoidable fraudulent transfers.

## FRAUDULENT TRANSFERS AND THE ANTECEDENT DEBT EXCEPTION

The Bankruptcy Code provides two separate bases upon which fraudulent transfers may be attacked. The first is section 548 of the Bankruptcy Code. Section 548(a) may be used to avoid a fraudulent transfer if such transfer was made within one year before the date of the filing of the petition. If a transfer has been made more than one year before the filing of the petition, the Trustee may use the second basis upon which to attack the fraudulent transfer. This is section 544(b) of the Bankruptcy Code. Section 544(b) gives the Trustee the right to avoid any transfer which would be avoidable under state law by a creditor holding an unsecured claim.

█ The Trustee is proceeding under the Bankruptcy Code to avoid certain Transfers made within one year of the Debtor's petition date, and under the application of section 544(b) and the New York Debtor and Creditor Law ("Debtor and Creditor Law") to avoid those Transfers made greater than one year preceding the petition. In New York, an action to avoid a fraudulent transfer on the basis of constructive fraud is timely if commenced within six (6) years of the transfer. N.Y.Civ.Prac.L. & R. 213(1) (McKinney 1992). *E.g., McCabe v. Gelfand,* 58 Misc.2d 597, 295 N.Y.S.2d 583 (1968); *In re Ahead by a Length, Inc.,* 100 B.R. 157 (Bankr.S.D.N.Y.1989).

The Trustee has asserted five (5) claims for relief. Four (4) of the Trustee's claims for relief are under Debtor and Creditor Law sections 273, 274, 275, and 277, and one is under Bankruptcy Code section 548. A transfer may be avoided under Debtor and Creditor Law: (i) section 273 if the transferor is or will be thereby rendered insolvent, without regard to actual intent, and the transfer was made without fair consideration; (ii) section 274 if made without fair consideration when the transferor making it is engaged or is about to engage in a business or transaction for which the property remaining in the transferor's hands after the transfer is an unreasonably small capital, by creditors and other persons who become creditors during the continuance of such business or transaction without regard to the transferor's actual intent; (iii) section 275 if made without fair consideration when the transferor intends or believes that it will incur debts beyond its ability to pay as they mature; and (iv) under section 277 if made by a partnership of partnership property when the partnership is or will be thereby rendered insolvent if the transfer is made either to a partner, whether with or without a promise by him to pay partnership debts, or to a person not a partner without fair consideration to the partnership as distinguished from consideration to the individual partners. N.Y.Debt & Cred.Law §§ 273, 274, 275, 277.

A transfer may be avoided under section 548 of the Bankruptcy Code if the debtor voluntarily or involuntarily received less than reasonably equivalent value in exchange for such transfer or obligation, and was insolvent on the date that such transfer was made, or became insolvent as a result of such transfer, and (i) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (ii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured. 11 U.S.C. § 548(a).

It is not disputed by the Defendants that the Debtor was insolvent at the time of the transfers or rendered insolvent thereby.

Therefore, the question for the Court to decide is whether the Debtor received "fair consideration" under the Debtor and Creditor Law, and/or "value" under the Bankruptcy Code, in exchange for the Transfers made to the Defendants.

"Fair consideration" is defined by the Debtor and Creditor Law:

> Fair consideration is given for property ...
>
> When in exchange for such property ... as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied....

N.Y.Debt. & Cred.Law § 272 a (McKinney 1992).

"Value" is defined by the Bankruptcy Code as including the satisfaction of a present or antecedent debt of the debtor. 11 U.S.C. § 548(d)(2)(A).

Under both the Bankruptcy Code and the Debtor and Creditor Law, therefore, a transfer made in satisfaction of an antecedent debt does not constitute an avoidable fraudulent transfer. We next examine the existence of a valid antecedent debt.

## THE VALIDITY OF THE DEBTOR'S DEBT TO THE DEFENDANTS

It is not disputed that the Officers executed written lease agreements, promissory notes, and many other documents in the Debtor's name. The issue is whether these actions by the Officers gave rise to valid debts owed by the Debtor to the Defendants.

█ A lease agreement, pursuant to which a lessee is given possession of personal property by its owner, is a contract. *C.f., General Elec. Credit Corp. v. Beyerlein*, 30 A.D.2d 762, 292 N.Y.S.2d 32 (App. Div. 4th Dep't 1968); 9 N.Y.Jur.2d § 3 at 11 ("A bailment contract which has for its object the use by the bailee of the property bailed is a "lease.").

█ A promissory note, upon which a loan transaction is created, is a simple contract governed solely by contract law if it is a nonnegotiable instrument; it is governed fundamentally by contract law and additionally by Article 3 of the Uniform Commercial Code if it is a negotiable instrument. *See generally* 80 N.Y.Jur.2d §§ 2; 2–165 (citing cases).

█ Intrinsically, therefore, the Loans and the Lease Agreements are contracts. They are binding and enforceable unless improperly executed or lack one of the fundamental requirements of all contracts such as an offer, an acceptance, or consideration. The Trustee has not, however, questioned the validity of the Loans and Lease Agreements for any of these reasons; nor has the Trustee asserted that the documents executed in creating the Loans and the Lease Agreements were technically invalid or defective. It has not been established (nor alleged) that the documents used to formulate the Loans and Lease Agreements are themselves invalid contracts. The Court holds, therefore, that the Loans and Lease Agreements are valid contracts entered into by the Debtor, through its Officers. We next address whether the Officers' acts bound the Debtor.

The Officers acted as agents acting for a principal, the Debtor. The Officers furnished the Defendants with copies of Corporate Resolutions of the Debtor's board of directors and an attorney opinion letter (the "Resolution and the Opinion Letter"). The Resolution and the Opinion Letter both professed to confirm that the Officers had the authority, pursuant to the Debtor's corporate charter and bylaws, and without violation thereof, to borrow money and lease property from Charter on the Debtor's behalf. This effectively clothed the Officers with the authority to bind the Debtor to the contracts entered into with the Defendants. The Debtor is now estopped from denying liability for the Officers' acts. "Where a corporation clothes an officer with authority and that officer makes representations which are reasonably relied upon in good faith by a third person, the corporation is estopped from denying such representations." *Keystone Leasing v. Peoples Protective Life Ins.*, 514 F.Supp. 841, 849 (E.D.N.Y.1981) (citations omitted). The Court also finds that the Defendants were justified in relying upon the Resolution and the Opinion Letter. Where the furnishing of a certified copy of a resolution of the board of directors is within the authority of an officer, a third party is justified in relying thereon. *E.g., National Blvd. Bank of Chi. v. Drive-in Develop. Corp. (In re Drive-in Develop. Corp.)*, 371 F.2d 215, 220 (7th Cir.1966) (citing *In re New York Car Wheel Works*, 141 F. 430 (W.D.N.Y.1905)).

Accordingly, the Court holds that the Debtor became bound to valid Loans and Leases executed by its Officers and the Defendants.

■ Notwithstanding the execution of the Loan and Lease documents, however, the Trustee maintains that the Debtor is not liable because *the Debtor* did not receive either the Loan Proceeds or the Equipment. The Trustee's logic is that if the Debtor never received any benefit from the Loans and Lease Agreements, then it could never become liable or bound thereby. According to the Loans, however, the Defendants were required to remit the Loan Proceeds directly to Steinway rather than to the Debtor; and according to the Lease Agreements, the Debtor's receipt of the Equipment was not a condition precedent to its obligations under the Lease Agreements. The Trustee's argument fails because (i) the Defendants merely performed according to the Loan and Lease Agreement contracts; (ii) the Debtor's control over the Loan Proceeds is equivalent to the Debtor's receipt thereof; and (iii) the Debtor's liability under the Lease Agreements was never contingent upon the Debtor's actual receipt of any of the Equipment.

With respect to the Loans, the lending Defendants' respective performances satisfied their respective obligations. The Defendants remitted the Loan proceeds directly to Steinway pursuant to the Debtor's written authorization and direction. Payment directly to Steinway satisfied the Defendants' contractual obligation to the Debtor. This is not an atypical financing arrangement, moreover. Where a lender desires to keep a security interest in the items purchased with the loan proceeds, the lender often remits the funds directly to the supplier to insure that the collateral is in fact purchased. In the instant case, it was the mutual choice of both the lending Defendants and the Debtor that the Loan Proceeds be remitted directly to the supplier.

A loan made to a borrower is no less a loan if it is remitted to a third party at the borrower's direction and on the borrower's behalf. The Court holds that at the instant Steinway received the Loan Proceeds, the Defendants satisfactorily performed their part of the Loan contracts and thereby bound the Debtor to complete its performance.

With respect to the Lease Agreements, the leasing Defendants satisfied their primary obligations to the Debtor upon remitting the Equipment's purchase price to Steinway. Pursuant to the Lease Agreements, the Debtor was obligated to make its monthly payments regardless of the status of the leasing Defendants' title to the Equipment and regardless of whether the Equipment was delivered. This was stated in Clause 4 of each Lease Agreement. Clause 4, in relevant part, was written as follows ("Lessee" is the Debtor and "Lessor" is Charter):

> Lessee acknowledges that Lessor is not the manufacturer of the Equipment nor the manufacturer's agent nor a dealer therein; Lessee has selected the Equipment prior to having requested Lessor to purchase the same for leasing to Lessee; Lessee is satisfied that the Equipment is suitable and fit for its purposes; and the *Lessor has not made and does not make any warranty or representation whatsoever, either express or implied, as to* the fitness, condition, merchantability ... *Lessor's title to the Equipment* nor any other representation or warranty whatsoever.... *No ... failure on the part of the manufacturer or the shipper of the Equipment to deliver the Equipment or any part thereof to Lessee, shall relieve Lessee of the obligation to pay Rental or any other obligation under this Lease.* Lessor shall have no obligation under this Lease in respect of the Equipment and shall have no obligation to install, erect, test, adjust or service the Equipment.

Clause 4 of each Lease Agreement (emphasis added).

Accordingly, the Defendants were not to be held responsible for the Debtor's failure to receive the Equipment, whether such failure was caused by Steinway or otherwise. The Debtor's recourse for not receiving the Equipment is presumably against Steinway but not against the Defendants. The Court holds that once the Defendants'

funds were received by Steinway, the Defendants' performance was complete and the Debtor became liable.

The Defendants' performances pursuant to both the Loans and Leases gave rise to valid debts owed by the Debtor to the Defendants. The Transfers were certainly made in satisfaction of this debt. Accordingly, the Court holds that under both the Bankruptcy Code and the Debtor and Creditor Law, the Debtor received both value and fair consideration in exchange for the Transfers. Since, in exchange for the Transfers, the Debtor received reasonably equivalent value and fair consideration in the form of satisfaction of an antecedent debt, the Transfers do not constitute avoidable fraudulent transfers. Accordingly, the Defendants' motion for summary judgment is GRANTED. As stated, the Court also grants summary judgment to the non-moving Defendants that are assignees of the moving Defendants and possess identical rights, for purposes of this matter only. All of the above-referenced Adversary Proceedings are DISMISSED.

SO ORDERED.