William R. Brennan, Jr., J.
In this action to foreclose a mortgage made on March 31, 1958, the plaintiffs and the defendant Lawrence A. Hochschwender (hereinafter referred to as “Lawrence ”) are brothers and sisters. On January 2, 1952, the plaintiffs, the defendant Lawrence, and his mother, Helen Hochschwender, owned interests in Flatbush Chevrolet *701 Sales Corporation (Flatbush) and four other corporations. On that day the said parties entered into an agreement whereby the defendant acquired his mother’s and the plaintiffs’ interests in Flatbush for $150,000, of which $120,000 was to be paid in deferred installments. The remaining corporations were to be dissolved and the properties held by them conveyed to the individual parties to the agreement in accordance with their respective interests.
Thereafter, on the 18th of March, 1954, the plaintiffs and the defendant Lawrence, now vested with title to three parcels of real estate in Brooklyn, contracted to sell said parcels to the defendant Dorio Corporation (Dorio), a domestic corporation organized in 1944 and whose sole stockholder was and is the defendant Lawrence. The price was $300,225 payable as follows: $160,000 to the plaintiffs in cash, $60,000 by waiver by Lawrence of his personal share of the purchase price, $50,000 by the purchaser (Dorio) giving a second purchase-money mortgage in that amount to the plaintiffs, and $30,225 by the said purchaser satisfying a then existing mortgage held by Flatbush Savings Bank.
On March 25, 1954, the said individuals, by deed recorded on the following day, conveyed the said parcels to Dorio. On the same day Dorio gave back to the plaintiffs a mortgage covering said parcels, among others, which mortgage was recorded on March 30, 1954, and which recited an indebtedness of $50,000. Installment payments were provided for and the unpaid mortgage balance was stated to be due on March 25, 1964. The good faith of the plaintiffs in this transaction is not subject to question.
Dorio ran into difficulties in 1957 and Lawrence advised his brothers and sisters (the plaintiffs) that his corporation could obtain a mortgage loan on the Brooklyn properties then in Dorio’s name, provided the 1954 mortgage which they held were satisfied. He offered a Dorio mortgage on property at 185 Tanglewood Crossing in the Village of Lawrence, Long Island, in exchange for the satisfaction of the 1954 mortgage. The Tanglewood Crossing property had been acquired by Dorio on December 4, 1953, for a price of $100,000 in a transaction to which reference will be made below. At the time of the proposal there was still due to the plaintiffs on the 1954 mortgage the sum of $41,554.35.
The mortgagees delivered a certificate of satisfaction of the 1954 mortgage covering the properties in Brooklyn (which certificate bore the date March 22, 1958 and was recorded April *702 1, 1958) and received the mortgage note of Dorio secured by its mortgage on the Tanglewood Crossing property for $41,554.35. The original (1954) mortgage called for quarterly installments of $937.50 applicable to interest at 4%% and reduction of principal; the new mortgage called for like installments and like interest. The upaid balance of the original mortgage was due March 25, 1964; the unpaid balance of the new mortgage was to become due on March 31, 1964. There can be no question as to the adequacy of the consideration for the mortgage; nor was it made with intent, actual or presumed, to hinder, delay or defraud creditors of either Dorio or Lawrence; nor was it a gratuitous, conveyance in any sense.
While these transactions were taking place within the family circle, other events were taking place without it to which reference will now be made.
The Internal Revenue Service on December 31, 1956 made assessments of taxes against the defendant Lawrence as transferee of Flatbush Chevrolet for the years 1949, 1950, 1951 and 1953, the unpaid amounts of which, including interest, aggregated $40,149.11 as of March 3, 1960. A Federal tax lien against him was duly filed on August 9, 1957 (this Avas in a greater amount at the time of filing, but has been reduced by payments and a partial abatement).
The contention of the United States is that its lien attached to the Tanglewood Crossing property of Lawrence A. Hochschwender when Dorio deeded it to him on April 1, 1958, at Avhich time the plaintiffs’ substituted mortgage had not yet been recorded. It also argues that if this it not true, its lien attached to the property on August 9,1957 in any event because Dorio was in fact the alter ego of Lawrence and that the corporate entity should be accordingly disregarded.
These contentions must be evaluated by a close scrutiny of the time factors involved. The United States filed its lien against Lawrence Hochschwender on August 9, 1957. On and before this date the plaintiffs had a valid mortgage lien on the Brooklyn properties of Dorio, which xvould have had priority over any Government lien filed against Dorio even if the corporate veil were pierced at that time and Dorio were held to be an alter' ego of LaAvrence Hochschwender. On March 31, 1958, plaintiffs accepted, as an accommodation to their brother Lawrence, a substituted mortgage on the TangleAvood property in place of the mortgage on the Brooklyn properties. Dorio was then the record OAvner of both the Tanglewood and the Brooklyn properties, and the record revealed no liens by the Goxmrnment *703 on any of the Dorio properties. Consequently, at that moment, plaintiffs held a wholly valid mortgage lien against the Tangle-wood property of Dorio. Their mortgage was not recorded until April 7, 1958, one week after execution, a normal interval for recording. It was not until May 29,1958, two months after this mortgage, that there was recorded a deed purporting to transfer the Long Island property from Dorio to Lawrence Hochschwender individually, which deed was dated April 1, 1958, a convenient date indeed, one day following the mortgage, and some six days before it was recorded. This late recording of the purported deed would suggest the possibility that the deed was not executed and delivered on April 1, but in fact back dated as an afterthought of Lawrence Hochschwender. No factual determination of this possibility need be made however. Recording of the deed raises a presumption of delivery, but the presumption is effective only as of the date of recording, not the date of execution. (Maryland Cas. Co. v. Stern, 5 Misc 2d 423.) Moreover, the deed itself was ineffective to convey an unqualified fee simple. It was a full covenant and warranty deed which purported to transfer the property free and clear of mortgage liens. Dorio had notice of the plaintiffs’ mortgage. Lawrence Hochschwender had similar notice. Dorio had no power to transfer the property other than subject to that mortgage. (People v. Douglass, 217 App. Div. 328.) Therefore, even if the deed were executed and delivered on April 1, it was nevertheless fraudulent as to the plaintiffs and could not transfer title to Lawrence in any manner other than subject to plaintiffs’ mortgage. The most that Lawrence received by this deed was the equity of redemption. ‘ ‘ A greater estate or interest does not pass by any grant or conveyance, than the grantor possessed or could lawfully convey, at the time of the delivery of the deed ” (Real Property Law, § 245).
The Federal tax lien was not then valid against the plaintiff mortgagees (U. S. Code, tit. 26, § 6323). It could only attach to the equity of redemption held by Lawrence Hochschwender. The United States contends, however, that the corporate entity of Dorio should be disregarded as a mere alter ego of Lawrence Hochschwender, and that the Tanglewood property should be considered as being in Lawrence Hochschwender even before August 9, 1957. While the evidence adduced at the trial indicates that Lawrence dominated the Dorio corporation, this in itself does not require that its separate status be disregarded. It can safely be assumed that the plaintiffs would never have consented to the substitution of the Tanglewood property for *704 their valid mortgage on the Brooklyn properties, if at that time Lawrence Hochschwender were the record owner of Tangle-wood. The Government lien was already filed against Lawrence, and the substitution would have constituted an outright gift to the tax gatherer, a somewhat unlikely eventuality. Plaintiffs relied on the record title, and they had every right to do so. They relied on the distinction between the corporate and individual entities, a perfectly proper course of conduct.
The corporate entity may be disregarded where it is used “ as a cloak or cover for fraud or illegality ” (Jenkins v. Moyse, 254 N. Y. 319, 324). But there is not even a whisper of fraud or illegality in this case. In Bartle v. Home Owners Co-op. (309 N. Y. 103, 106-107) the court said: “ Generally speaking, the doctrine of ‘ piercing the corporate veil ’ is invoked ‘ to prevent fraud or to achieve equity ’ (International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N. Y. 285, 292; see Halsted v. Globe Ind. Co., 258 N. Y. 176, 179; Jenkins v. Moyse, 254 N. Y. 319, 324; Quaid v. Ratkowsky, 183 App. Div. 428, affd. 224 N. Y. 624). But in the instant case there has been neither fraud, misrepresentation nor illegality.”
In that case specific findings were made that the defendant owned all the shares of the corporation, controlled it; that the outward indicia of the two separate corporations was maintained during the period when the creditors extended credit; that the creditors were in no way misled; and that there was no fraud. The identical findings are made here.
Thus, the plaintiffs’ mortgage is a valid lien which takes priority over the lien of the United States.
Defendant New York Trust Company is in the unenviable position of having given to Lawrence Hochschwender and his wife an unsecured loan in the amount of $150,000 on March 21, 1958, 10 days prior to the mortgage transaction it now challenges. It too seeks to pierce the corporate veil, treat the Tanglewood property as Lawrence Hochschwender’s rather than Dorio’s, and thereafter attack it as a fraudulent conveyance. For reasons already noted, the corporate entity will not be disregarded, but even if it were, the conveyance could not be set aside as fraudulent, since, as has been noted, it was given for a good and fair consideration. (Cf. County Fed. Sav. & Loan Assn. v. Walsh Rights Corp., 19 Misc 2d 634.)
The plaintiffs are hereby awarded judgment foreclosing the mortgage.