In re Theresa H. SKALSKI, Debtor.

**William E. Lawson, as Trustee in Bankruptcy of Theresa H. Skalski, Plaintiff,**

v.

**William R. Barden and Christine A. Barden, Defendants.**

Bankruptcy No. 99–14798 K.
Adversary No. 99–1368 K.

United States Bankruptcy Court, W.D. New York.

Jan. 2, 2001.

William E. Lawson, Buffalo, Trustee.

David A. Curtin, Williamsville, for Debtor.

MICHAEL J. KAPLAN, Bankruptcy Judge.

This case presents the common scene of a parent (perhaps an aged or infirm parent) transferring her valuable house, without consideration, to a grown child while she is insolvent (or rendering herself insolvent), in what she thinks is a guileless, fair, and fair-minded exchange for her future care by her child.

In law, it is a fraudulent transfer even if the child did not know about the debts. If the child is not going to pay the fair value of the house, then he or she should have searched for and paid all the parent's debts (borrowing against the house if necessary). If that was not done, and the transfer is exposed years later in a state-

law fraudulent transfer action (in either bankruptcy court or state court) the son or daughter is caught in a bind that can be tragic for everyone other than the parent's creditors.

## BACKGROUND

The Chapter 7 Trustee commenced this adversary proceeding pursuant to 11 U.S.C. § 548 and § 550 and § 544 and Bankruptcy Rule 7001(c) seeking to avoid and recover a transfer made by the Debtor to the Defendants. The thrust of the Trustee's fraudulent transfer argument seems to fall under New York Debtor and Creditor Law § 273.[1] The Trustee asserted that the Defendants are the Debtor's daughter and son-in-law. He became aware at the § 341 meeting that the Debtor transferred her home at 18 Fairview Drive, Depew, New York, to the Defendants on March 3, 1995, that she took a note in the amount of $35,000 therefor, and that at some point in time the Debtor forgave the obligation. The circumstances surrounding the transfer, the $35,000 note, and the forgiveness thereof, appear not to be in dispute, but the details are not clear from the record.

The Defendants make general denials and raise the statute of limitations as an affirmative defense. After a pre-trial conference and voluntary discovery the Trustee moved for summary judgment on the grounds that there is no genuine issue as to any material fact and that the transfer was fraudulent by reason of the fact that it was made without fair consideration and that the Debtor was insolvent on the date the transfer was made. The Trustee's motion was supported by the Debtor's Schedules showing that her unsecured nonpriori-ty claims, totaling $65,788.83, almost all originated before the 1995 transfer. The Trustee also addressed Defendants' affirmative defense regarding the statute of limitations by pointing out that the statute of limitations for objecting to a fraudulent transfer under New York law is six years and that the Trustee was timely in commencing the adversary proceeding.

The Defendants' attorney responded to the summary judgment motion with his own answering affirmation alleging that the Trustee did not meet his burden for summary judgment because the Trustee "merely alleges in general fashion that the conveyance at issue was fraudulent." (Curtin Aff. ¶ 3). The Defendants' attorney correctly argues that the Trustee is time-barred under 11 U.S.C. § 548 and correctly seems tacitly to concede that the Trustee is not time-barred under New York fraudulent transfer law. On the merits, he offers as evidence the affidavits of the Defendant Christine A. Barden and Debtor Theresa H. Skalski stating that any "loan forgiveness" was in fact a bargained-for promise of future support, and he attaches documentation claiming fulfillment of that obligation to the extent of $23,149.07. He argues that summary judgment must be denied because there is an existence of material fact as to the consideration underlying the conveyance at issue.

The Court has advised both parties to read *Wallach v. Kotowski* (*In re Dziadosz*), Ch. 7 Case No 97–11056–K, Adv. No. 98–1355 (Bankr.W.D.N.Y. June 23, 1997) wherein this Court has previously ruled that a promise of future support is not good consideration.[2]

---

1. N.Y.Debt. & Cred. Law § 273 provides:

   § 273. Conveyances by insolvent

   Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

2. See also *Zoeller v. Riley,* 100 N.Y. 102, 2 N.E. 388 (1885); *Robinson v. Stewart,* 1854 WL 5972 (N.Y.); *Rush v. Rush,* 19 A.D.2d 846, 244 N.Y.S.2d 673 (2nd Dept.1963); *Liggio v. Liggio,* 53 A.D.2d 543, 385 N.Y.S.2d 33 (2nd Dept.1976); *Petition of Nat'l City Bank of N.Y.,* 269 A.D. 1040, 58 N.Y.S.2d 620 (2nd Dept.1945); *Schmitt v. Morgan,* 98 A.D.2d 934, 471 N.Y.S.2d 365 (3rd Dept.1983); *Elmore Milling Co. v. Carkees,* 255 A.D. 410, 7

710

The Defendants' attorney seeks to distinguish *Kotowski* because in that instance the transferee was aware of the Debtor's insolvency at the time of the transfer. Further it is argued that in the event summary judgment were to be granted, the Defendants would be entitled to certain offsets which will be discussed later.

## DID DEFENDANTS PROPERLY RESPOND TO SUMMARY JUDGMENT MOTION?

The first issue for decision is whether Defendants properly responded to the summary judgment motion in light of the ruling in *Kotowski.* Under Rule 56(e) "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56. The Defendants' response in this case does provide affidavits to supplement the pleadings, but, in light of the Court's ruling in *Kotowski*, the affidavits of the Defendant and Debtor attesting to the fact that the only consideration was a promise of future support provide no evidence upon which there is a genuine issue for trial.

■ In reflecting upon the underlying principles, the Second Circuit Court of Appeals, quoting a district court, held that "promises of future benefits cannot be a substitute for present 'property' under [N.Y. Debt. & Cred. Law] § 272(a)." *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058 (quoting *HBE III*, 851 F.Supp. at 573 (1994)). The Circuit Court set forth a test under § 272(a) containing the following elements: (1) defendant, as recipient of debtor's property must either (a) convey property in exchange, or (b) discharge an antecedent debt in exchange, and (2) such

exchange must be a fair equivalent of the property received; and (3) such exchange must be in "good faith." *Id.* at 1058–59. *See also HBE Leasing Corp. v. Frank, et al.*, 851 F.Supp. 571, 574 (S.D.N.Y.1994) (promises of future benefits cannot be a substitute for present "property" under 272(a)).

On their face, then, the Defendants' responsive papers offer no creditable defense as a matter of law, and no issue to try.

## DOES DEFENDANT'S LACK OF KNOWLEDGE OF DEBTOR'S INSOLVENCY RAISE A GENUINE ISSUE FOR TRIAL?

The second question relating to Defendants' response is whether the issue, raised not in the papers, but raised for the first time at oral argument by Defendants' attorney, would be enough to defeat the summary judgment motion; i.e., to warrant trial on the matter of the Defendants' knowledge at the time of the transfer.

During oral argument the Defendants' attorney argued that *Kotowski* may be distinguished because in *Kotowski* the mother (transferee) had actual knowledge that the transfer was fraudulent, whereas in the present case the denial of such knowledge raises a genuine issue of material fact. Although no affidavit is filed, the Court will accept the argument as a proffer of evidence that the Defendants took the property without knowledge of the Debtor's insolvency.

The *Kotowski* case involved dozens of undocumented monetary transfers to, from, and between that debtor and her mother or to third persons "on behalf" of the Debtor or her mother (supposedly). The case did not involve a transfer of a valuable item or parcel of property. Ms. Kotowski claimed a multitude of loans, repayments, and trusts, to explain the doz-

N.Y.S.2d 885 (3rd Dept.1938); *Kain v. Larkin*, 4 A.D. 209, 38 N.Y.S. 546 (3rd Dept.1896); *Kain v. Larkin*, 17 N.Y.S. 223 (App.Div. 3rd Dept.1891)rev'd on other grounds, 131 N.Y. 300, 30 N.E. 105 (1892); *Vinlis Construction*

*Co. v. Roreck*, 67 Misc.2d 942, 325 N.Y.S.2d 457 (S.Ct., Nassau Cty.1971), aff'd 43 A.D.2d 911, 351 N.Y.S.2d 648 (2d Dept.1974); *Kelly v. Kelly*, 116 Misc. 195, 189 N.Y.S. 804 (S.Ct., Bronx Cty.1921).

ens of transfer. The fact that Ms. Kotowski had knowledge of her daughter's commission of crimes and consequent insolvency did not bear on the matter of the requisite elements of the theories of recovery, but rather to make clear the good sense of the governing precepts that placed the burden of proof on her, rather than on the Trustee. She should have kept careful records to prove her tale that the various transfers were (as she sought to prove by her self-serving testimony alone) payments for money that her daughter owed her, and loans from her daughter that she subsequently repaid, and funds which she held for her daughter and daughter's family under obligations of trust which she fully performed. She could not claim good faith as an excuse for not maintaining such records. Thus, the *Kotowski* ruling does not make the knowledge or state of mind of the transferee an element of the cause of action, but rather addresses only the burden of proof and sufficiency of the evidence.

The statute itself does address state of mind, however, in some instances. Section 273 which is set out above refers to "fair consideration" and to determine what is meant by "fair consideration" one must look at § 272. Section 272 reads as follows:

> Fair consideration is given for property, or obligation,
>
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in *good faith*, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received in *good faith* to secure -a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained. N.Y. Debt. & Cred. Law § 272 (McKinneys 1990) (emphasis added).

The court in *Studley v. Lefrak*, 66 A.D.2d 208, 412 N.Y.S.2d 901 (App.Div. 2nd Dept.1979), aff'd 48 N.Y.2d 954, 425 N.Y.S.2d 65, 401 N.E.2d 187 (1979) held that "good faith of both the transferor and transferee ... is an indispensable condition in the definition of fair consideration under [§ 272]." *Id.* at 905.

■ The court in *In re Bennett Funding*, 2000 Bankr.LEXIS 565 (2nd Cir. BAP 2000) looked at the good faith component of the fair consideration requirement of § 272 and focused on whether it was the good faith of the transferee, transferor, or both. The court set forth the following test under § 272 stating: "the test is profitably analyzed as follows: (1)[the] recipient of the debtor's property must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a 'fair equivalent' of the property received; and (3) such exchange must be in 'good faith.'" *Id.* at *8. The test is in the conjunctive and it appears that good faith is an issue only if the element of "consideration" has been met. In other words, fair value is not sufficient if bad faith taints the transaction.

■ In the present Court's view, "good faith" of the transferee does not insulate a "gift" from the application of fraudulent transfer law. Rather, there must be both good faith *and* good consideration on the part of the transferee. In the instant case, the transferees (Defendants) may not have had knowledge that the Debtor was insolvent, and they therefore might have received the Debtor's property in good faith. It will be assumed arguendo that that is so. However, they did not (a) convey property in exchange, or (b) discharge an antecedent debt in exchange. And their promise for future support cannot give new value or be a substitute for present "property."

## DO CERTAIN PAYMENTS MADE BY THE DEFENDANTS CONSTITUTE "FAIR CONSIDERATION," OR ENTITLE THEM TO AN OFFSET

The Defendants argue that they are entitled to an offset "to the extent the trans-

feree ... gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C. § 548(c). In point of fact, that provision deals not with "offsets," but rather with the "value" element of a § 548 cause of action. There is no need to quibble, however. By its own terms, 11 U.S.C. § 548(c) yields to actions under 11 U.S.C. § 544, and this is § 544 action.[3] If the Trustee were seeking turnover of the house, then under 11 U.S.C. § 550(e) the Defendants might be able to claim an offset towards any carrying costs or improvements to the home that were paid for by them. But it is only the $35,000 indebtedness that was forgiven by the Debtor that the Trustee seeks. The house and everything that the Defendants have put into it are not relevant.

■ There is some authority for the proposition that when a conveyance is made in consideration of future support of the grantor, and the parties are acting in good faith, and such support is actually furnished, then the conveyance is valid as against creditors of the transferor to the extent of the value of support that was furnished (but that in making the determination of the amount by which what was transferred by the debtor has a value in excess of the value that was furnished by the transferee, the transferee is to be charged with the income from the property or the value of the use and occupation of the property.)[4] Here the Defendants' arguments are muddled. They obtained title to the property at 18 Fairview Drive in Depew, New York and the Debtor "forgave" their obligation to pay her $35,000 therefor. Both in the Debtor's own bankruptcy schedules and in the papers submitted by the Defendants in response to the Summary Judgment Motion, it is repre-

sented that the Debtor thereafter paid the Defendants $450 per month rent. The Defendants did not support the Debtor; she paid them rent. Given the fact that there is no claim that the fair rental value was in fact much higher, it is nonsensical for the Defendants to claim that the consideration for the transfer of the house was a promise of future support, which promise they have fulfilled, when in fact they have been charging the Debtor $450 a month since she deeded the property to them.

Furthermore, how the Defendants, as the Debtor's landlords, could claim that the payment of property taxes and expenditures for maintenance and repair of the property that they own, and for which the Debtor was paying rent, should inure to the Defendants' credit as being items paid "in support of" the Debtor, completely escapes the Court. Paying the property taxes and otherwise maintaining the value of *their own property,* is not "support" of the Debtor when they are charging the Debtor fair market rent. Intriguingly, in what appears to be a post-hoc effort to "beef up" the dollars by which they claim to have provided for the Debtor's support, the Defendants have claimed that on some unspecified date they paid the Debtor $6800 representing a "$100 per month refund" for sixty-eight months of rent. This might suggest that the fair rental value of the property has been only $350 per month, not $450 per month.

Once one disregards all of the claimed items of "support" that this Court rejects as being, in fact, expenditures for the protection and maintenance of the real estate that the Defendants obtained without fair consideration from the Debtor, one is left with an asserted $10,000 to $15,000 that

---

**3.** It is interesting to note that if this were a § 548 fraudulent transfer action rather than a state law fraudulent transfer action brought under 11 U.S.C. § 544, § 548(d)(2)(A) does, in contradistinction to state law, seem on its face to credit actual payments in support of a debtor (but not "an unperformed promise to furnish support") as "value" that supports a

transfer. No effort has been made to examine cases on this point, to see if the federal statute has been read more narrowly than its text suggests.

**4.** 37 Am.Jur.2d, *Fraudulent Conveyances* § 35 [case authorities omitted] [1968].

was purportedly expended by the Defendants on the Debtor's car, health and beauty aids for the Debtor, extensive veterinary bills for the Debtor's pet, paying the Debtor's attorney's fee for filing the bankruptcy case, $4245 in cash to the Debtor, and some small miscellaneous expenditures. They also claim to have spent $1200 in clothes for the Debtor and to have forgiven all rent for the four months leading up to the bankruptcy filing. These purported expenditures ranged over a five-year period from April of 1995 to July of 2000.

This long list of purported payments claimed by the Debtor and the Defendants as fair consideration for the forgiveness of $35,000 does not raise a genuine issue for trial. As indicated above, none of the expenditures for the preservation, maintenance, or repair of the real estate could be credited towards the Debtor's "support" because it was the Defendants who owned the property and they were charging the Debtor fair market rent therefor. Furthermore, if in fact they "refunded" $6800 in rent to the Debtor, they should have remitted it to the bankruptcy trustee; 68 months from the April 1995 transfer brought us past the 1999 commencement of this case, and it is not exempt property. Defendants cannot have a credit claiming that this refund is "support" of the Debtor. And picking and choosing to help the Debtor with certain selected expenses over a five-year period, such as her veterinary bills, acquiring and maintaining an automobile, paying for her health and beauty aids, paying her share of support for a "foster child," etc., cannot by any stretch of the imagination rise to a performance of any promise to meet the support needs of the Debtor, so as to constitute good consideration for the transfer of the house. Rather, it seems that the Debtor paid her own utilities, food, etc. Indeed, it could be said that in order to demonstrate a fully performed promise to meet a transferor's support needs, her credit card bills for her consumer type needs should also have been paid for by the transferee. (Perhaps the Defendants would support her now, so that the Debtor may devote all of her pension and Social Security income to the payment of her debts in full, over the life of a Chapter 13 Plan.)

This Court will leave to another day the circumstances, if any, under which it might find itself in agreement with the view that if a promise of future support has actually been performed, then a conveyance based solely on that promise of future support would be a valid conveyance by an insolvent. For today's purposes it suffices to say that when the Debtor filed her bankruptcy Schedules and Statements, she claimed, on her Schedule J, that her average monthly expenses (which includes $450 allegedly paid to the Defendants for rent) total $2102; that her income is $1841 per month (she is a retired Postal Worker, with a pension as well as Social Security); and that it is she, not the Defendants, who pays her expenses (apart from certain car and veterinary expenses perhaps). Even if the Court were to include all the expenses for which the Defendants wish credit regarding maintenance of the house that the Debtor transferred to them nearly six years ago, everything would total $23,149.07, which is less than eleven months of the Debtor's estimated average monthly expenses. Paying 11 months of average monthly needs over a five year period is not a "fulfilled" promise to support. Even paying the shortfall between the $1841 income and the $2102 in expenses could not be so described.

Consequently, the defense that "any 'loan forgiveness' of the mortgage that [the Debtor] took back when the subject property was transferred was in essence not a gift, but rather, fair consideration in exchange for [Defendants'] promise to support" the mother (Aff. of Defendant Christine Barden, ¶ 5, August 8, 2000) is simply not worthy of credit and does not raise a triable issue of fact.

In sum, to permit an insolvent person to transfer a $35,000 asset to a close family

member, and then to let them pick which ordinary and just obligations the family member will pay thereafter as "consideration" for the transfer, would be to permit transfers among family members that place valuable assets beyond the reach of creditors in violation of fraudulent transfer law.

## CONCLUSION

The Trustee has made a prima facie case that the transfer was fraudulent under Section 273 of the N.Y. Debtor and Creditor Law and 11 U.S.C. § 544 because there was no fair consideration and the Debtor was insolvent at the time the transferred occurred, or was rendered insolvent thereby. The Trustee has supported his motion by offering Debtor's Schedule F which indicates that Debtor was insolvent following the transfer.

The Defendants have failed to come forward with at least enough evidence to demonstrate a triable issue. They have offered nothing to overcome the Trustee's evidence (the Debtor's own schedules) that the Debtor was insolvent at the time of the transfer. Their argument that a promise of future support constitutes fair consideration is rejected as a matter of law, as is their statute of limitations defense (except as to any 11 U.S.C. 548 claim). The argument that Defendants lacked knowledge of Debtor's insolvency and took title in good faith is of no avail because the statute requires not only good faith, but good consideration as well, and as a matter of law, neither the promise of future support nor the actual payments asserted are good consideration. The Trustee's motion for summary judgment is granted.

 Returning now to what was expressed at the outset. Taking title to a parent's home without paying the parent's debts [5] can have tragic results for the chil-

dren. They might, as here, end up with a huge judgment against them, and perhaps a judgment lien against their own home. As expressed in *Kotowski* and countless earlier cases, transfers among family members are subject to great scrutiny when they occurred while the transferor was insolvent or rendered insolvent. In accepting a $35,000 gift from a parent, the son or daughter acts at peril of a future judgment in that amount.

Judgment shall enter for the Trustee in the amount of $35,000 plus costs.

SO ORDERED

---

5. If the debts exceed the value of the home, then, at the least, the children should give a note for its value, and document all payments on the note, whether the payments are made to the parent or to someone else on the par-

ent's behalf. Though this would not assure that the transfer will stand ("good faith" might be lacking), it would provide the kind of evidence that was lacking in *Kotowski*.